# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RIGHT FIELD ROOFTOPS, LLC,<br>d/b/a SKYBOX ON SHEFFIELD;<br>RIGHT FIELD PROPERTIES, LLC;<br>3633 ROOFTOP MANAGEMENT, LLC,<br>d/b/a LAKEVIEW BASEBALL CLUB; and<br>ROOFTOP ACQUISITION, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CHICAGO BASEBALL HOLDINGS, LLC;<br>CHICAGO CUBS BASEBALL CLUB, LLC;<br>WRIGLEY FIELD HOLDINGS, LLC; and<br>THOMAS S. RICKETTS,<br><br>Defendants. | ) | Case No. 15cv551<br><br>Hon. Virginia M. Kendall<br><br>Magistrate Judge Michael T. Mason |

DECLARATION OF MARC HAMID

1. I am a Member of plaintiffs Right Field Rooftops, LLC, d/b/a Skybox on Sheffield (“Skybox”), Right Field Properties, LLC (“3627 Owner”), and Rooftop Acquisition LLC (“3633 Owner”).

2. I have personal knowledge of the contents of this Declaration, and if called I am competent to testify on the matters set forth herein.

3. 3627 Owner owns the building at 3627 N. Sheffield Avenue, Chicago, Illinois (the “3627 Property”). Skybox operates a business at the 3627 Property selling tickets to view events occurring live at Wrigley Field, primarily Chicago Cubs baseball games. Skybox also serves food and beverages and provides other amenities to its customers during these events. Skybox’s business is similar to the businesses operated at fifteen other buildings located on the 3600 block of North Sheffield, and the 1000 block of West Waveland, in Chicago, Illinois. For the purposes of this declaration I refer to the ownership of a building and the operation of the

entertainment opportunities at that building as a "Rooftop Business," and to the sixteen rooftop businesses operating on the 3600 block of North Sheffield and the 1000 block of West Waveland as the "Rooftop Businesses."

4. The names and general locations of the Rooftop Businesses are accurately depicted on the document attached hereto as Exhibit 1, which is available at www.thecubdom.com.

5. On September 30, 2005, Skybox purchased the 3627 Property and the Rooftop Business at that location from Third Floor Limited Partnership and Quoin, Ltd. Contemporaneous with that purchase, Third Floor Limited Partnership and Quoin, Ltd. also assigned to Skybox all of its right, title and interest in that certain Agreement with Chicago National League Ball Club, Inc. (the "Cubs") dated January 27, 2004 (the "Rooftop License Agreement"). Skybox subsequently transferred the 3627 Property to its affiliate, 3627 Owner, which then leased back to Skybox that portion of the 3627 Property where the Rooftop Business is located. A true and correct copy of the Assignment and Assumption Agreement is attached to this Declaration as Exhibit 2. A true and correct copy of the Rooftop License Agreement is attached hereto as Exhibit 2-A.

6. From November, 2005 to February, 2013, I served as the Manager of both Skybox and 3627 Owner. In that capacity, I oversaw the operations of Skybox's Rooftop Business.

7. In February, 2013, Edward McCarthy acquired interests in, and became the Manager of, Skybox and 3627 Owner. Thereafter, I continued to oversee the operations of the Skybox Rooftop Business.

8. 3633 Owner is the owner of the property located at 3633 North Sheffield, Chicago, Illinois (the "3633 Property"). 3633 Rooftop Management, LLC d/b/a Lakeview Baseball Club ("Lakeview Club") leases and operates the Rooftop Business at the 3633 Property.

9. On January 1, 2014, I was asked by Ed McCarthy to oversee the operations of the Lakeview Club, and thus I assumed the same duties that I have been performing at Skybox.

10. Both Skybox and Lakeview Club hold special club licenses granted by the City of Chicago (the "City") to operate their Rooftop Businesses.

11. On May 8, 2012, I attended a meeting at the Chicago Cubs headquarters, located at 3721 N. Clark Street, Chicago, Illinois. This meeting was set up by Thomas Moore, an attorney and the then-head of the Wrigleyville Rooftop Association ("Rooftop Association"). The Rooftop Association endeavors to represent the interests of all the Rooftop Businesses. Cubs executives in attendance at this meeting included Thomas Ricketts, Michael Lufrano, Alex Sugarman, and Crane Kenney. Representatives of various Rooftop Businesses also attended, including Jim Lourgos, George Loukas, Beth Murphy, Dan Finkel, Mark Schlenker, Aidan Duncan, George Vranas, Marc Anguiano, Paul Bauch and myself. Except for Mr. Bauch, each of these persons was known to me as an owner or representative of the various Rooftop Businesses at that time. Mr. Bauch was the attorney for certain Rooftop Businesses located at 3617, 3619, and 3637 North Sheffield.

12. During the May 8, 2012 meeting, the Cubs executives in attendance complained that the Rooftop License Agreement was a "bad deal" for the Cubs which was leading a "race to the bottom" for the pricing of Cubs tickets. The Cubs executives also complained that the Cubs and the Rooftop Businesses were in a "price war." The Cubs executives did not like that some Rooftop Businesses were selling tickets on Groupon or otherwise selling tickets at steep

discounts from advertised face value, because doing so reduced demand for Wrigley Field tickets. The Cubs demanded that the Rooftop Businesses coordinate with the Cubs to set minimum ticket prices.

13. Also during the May 8, 2012 meeting, Ricketts stated, “2023 can’t come soon enough.” Ricketts openly threatened to block the Rooftop Businesses’ views into Wrigley Field unless they agreed to set prices as directed by the Cubs, stating, “whatever you give us is in return for not being blocked.” None of the representatives of the Rooftop Businesses in attendance at the meeting agreed to the pricing proposal demanded by the Cubs’ representatives. They did agree to form a revenue committee and a compliance committee along with representatives of the Cubs to address the issues that the Cubs Organization raised, out of concern that not being cooperative would lead to being blocked.

14. A number of Rooftop Businesses, including the Plaintiffs, engaged Platt Retail Institute (“PRI”), a research and consulting firm for retailers, media companies and other business enterprises, to perform an independent analysis to determine the potential revenue that could be generated from the installation and operation of seven digital screens around Wrigley Field. Specifically, PRI was engaged to determine the potential revenue that could be generated if signs were placed upon the Rooftop Businesses. Thousands of dollars was spent by the Rooftop Businesses on this project.

15. PRI completed its work around the first week of September, 2012. Based upon that work, in September of 2012 the Rooftop Businesses, excluding “Down the Line,” made a written offer to the Cubs to allow the Cubs to install signage on the Rooftop Businesses’ facades and above the Rooftop Businesses’ seating areas. Under that proposal, the Cubs would control the content of the signs and to collect all of the revenue generated. The Cubs rejected this

proposal because they were concerned this would establish a bad precedent for future disputes with the Rooftop Businesses regarding the right to our views.

16. On May 28, 2013, the Cubs Organization arranged for a "mock up" event for its proposed jumbotron and video board. I was present at this event and it was clear that the sightlines would be substantially, if not completely blocked.

17. As a result of the Cubs' publicized sign plans, Lakeview Club and Skybox have had to modify our contracts with many of our customers to include a clause that forces us to return 50% - 100% of the clients' deposits if the sightlines from Skybox or Lakeview Club are blocked. Further, Skybox's and Lakeview Club's sales are down significantly from last year. January through the start of the baseball season is the most important time for Lakeview Club and Skybox to sell tickets, as our corporate customers make corporate outing decisions during this period of time.

18. I reviewed certain pictures attached as Exhibit 10-1 and Exhibit 10-2 to Thomas M. Lombardo's declaration. I provided Mr. Lombardo with the addresses and owner's names inserted into these pictures, based on who owned the properties in July, 2014 and who owns the properties now.

19. Both Skybox and Lakeview Club have experienced great difficulty booking rooftop ticket sales for the 2015 baseball season. Many customers are either refusing to book rooftop dates because of the threat of signs blocking the views into Wrigley Field, or they are demanding refunds if signs are installed before the date of their event. Attached hereto as Group Exhibit 3 are true and correct copies of twenty two (22) emails between existing and potential customers reflecting their unwillingness to book rooftop tickets without views into Wrigley Field, or their insisting upon refunds if the views are blocked. These emails reflect just a small

number of potential customers who have expressed these concerns and have either refused to book events or have demanded refunds if their views are blocked.

I, Marc Hamid, declare under penalty of perjury that the foregoing is true and correct.

Executed on February 11, 2015

[signature]

Marc Hamid

# Exhibit C-1


Seminary
The Fire Station
Wrigley View
Beyond the Ivy
Brixen Ivy
Apartment building
Beyond the Ivy
Wrigleyville Rooftops
Kenmore
Budweiser Building
Beyond the Ivy
Sheffield Ave.
Parking Lot
CTA Redline Tracks
Waveland Ave.
Waveland Ave.
Clark St.
Bike Check
Murphy's Bar
Murphy's Rooftop
Wrigleyville Rooftops
3639 Wrigley Rooftop
Ivy League Club
Lake View Club
Miller Lite Billboard
Skybox on Sheffield
Down the Line
Sheffield Club
Wrigley Rooftop Club
Wrigleyville Rooftops
Sheffield Ave.
CTA Redline Tracks
Clark St.
Addison St.
Addison St.
Please note:
TheCubdom.com's
Rooftop Directory
Map is not to scale.
Parking Lot
ELEVEN
Red Line Station

# Exhibit C-2

## ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "Assignment") is made as of November 15, 2005, by and between RIGHT FIELD ROOFTOPS, LLC, an Illinois limited liability company ("Assignee") and QUOIN, LTD., an Illinois corporation ("Quoin"), and THIRD FLOOR LIMITED PARTNERSHIP, an Illinois limited partnership ("3FLP", and collectively with Quoin, "Assignor").

## RECITALS:

A. Pursuant to that certain Real Estate Sales Contract and Rider dated as of September 30, 2005, as amended (the "Sale Agreement") by and between Assignor and Assignee, concurrently with the execution and delivery of this Assignment, Assignee is acquiring from Assignor (i) title to Unit 3-3627 (the "Unit") in the building located at 3627 North Sheffield Avenue, Chicago, Illinois 60613 (the "Building"), and (ii) the rooftop entertainment business operated by Seller at the Building (the "Business"), including, to the extent assignable, the rights in the name "Skybox on Sheffield", and the rights in the Special Club License.

B. Assignor is a party to that certain Agreement dated January 27, 2004 (the "Cubs Agreement") with the Chicago National League Ball Club, Inc. (the "Cubs") (a copy of the Cubs Agreement is attached to this Assignment as Exhibit "A").

C. In connection with the conveyance of the Unit and the Business from Assignor to Assignee, Assignor desires to assign to Assignee all of Assignor's right, title, interest and obligations in, to and under the Cubs Agreement, and Assignee desires to accept such assignment and to assume and agree to pay and perform all of Assignor's covenants, duties, obligations and liabilities under the Cubs Agreement.

## AGREEMENT:

In consideration of the foregoing recitals and other good and valuable consideration, Assignor and Assignee agree as follows:

1. **Assignment of Cubs Agreement**.

(a) Assignor hereby assigns and transfers to Assignee all right, title and interest of Assignor in, to and under the Cubs Agreement. Assignor agrees to indemnify, defend and hold harmless Assignee and Assignee's members, managers, officers, employees, affiliates, agents and representatives from and against any and all claims, demands, actions, losses, costs, damages, or expenses (including, without limitation, reasonable attorneys' fees and court costs) arising as a result of the failure of Assignor to fulfill, perform, discharge, and observe its obligations with respect to the Cubs Agreement arising on or before the date hereof, including Assignor's failure to timely pay and deliver the Royalty and Royalty Statement (as defined in the Cubs Agreement) for calendar year 2005, and prior.

(b) Assignee hereby accepts the assignment of the Cubs Agreement and assumes and agrees to keep, pay, perform, satisfy and fulfill all of Assignor's duties, covenants, liabilities and obligations under the Cubs Agreement, whether accruing or arising on or after the date hereof, including Assignee's failure to timely pay and deliver the Royalty and Royalty Statement (as defined in the Cubs Agreement) for any calendar year following 2005. Assignee hereby agrees to indemnify, defend and hold harmless Assignor and Assignor's partners, shareholders, members, managers, officers, employees, affiliates, agents and representatives from and against any and all claims, demands, actions, losses, costs, damages, or expenses (including, without limitation, reasonable attorneys' fees and court costs) arising as a result of Assignee's failure to keep, pay, perform, satisfy or fulfill any of the duties, covenants, liabilities or obligations assumed by Assignee under this Paragraph 1.

2. **Assignment of Intangible Property.** To the extent assignable, Assignor hereby assigns, transfers, sets over and conveys to Assignee all right, title and interest of Assignor in, to and under all intellectual property rights in the Business, including, but not limited to, all rights to use the name "Skybox on Sheffield" in connection with the Business (collectively, the "Intangible Property"). Assignee hereby accepts such assignment and assumes and agrees to keep, perform and observe all of the terms, covenants, agreements and conditions contained in the items of Intangible Property on Assignor's part to be kept, performed and observed and which shall accrue from and after date of this Assignment, subject to the terms, covenants and conditions contained in the items of Intangible Property and the terms and conditions of the Sale Agreement.

3. **Assignment of Special Club License.** To the extent assignable, Assignor hereby assigns, transfers, sets over and conveys to Assignee all right, title and interest of Assignor in, to and under the Special Club License No. 1069757, issued by the City of Chicago for the operation of the Business in the Building (the "License"). Assignee hereby accepts such assignment and assumes and agrees to keep, perform and observe all of the terms, covenants, agreements and conditions contained in the License on Assignor's part to be kept, performed and observed and which shall accrue from and after date of this Assignment, subject to the terms, covenants and conditions contained in the License, and the terms and conditions of the Sale Agreement, and as required by all applicable laws.

4. **Sale of Personal Property.** Assignor hereby sells, assigns, transfers and sets over to Assignee all of Assignor's rights, title and interest in and to all Personal Property in the Unit and belonging to the Business, including any warranties on such Personal Property that may still be in effect. Assignor hereby represents and warrants to Assignee that it is the absolute owner of the Personal Property assigned and conveyed herein, that the Personal Property is free and clear of all liens, charges and encumbrances, and that Assignor has full right, power and authority to sell and assign the Personal Property.

5. **Successors and Assigns**. This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

6. **Authority**. Each of the parties signing this Assignment hereby warrants and represents that it has the full legal power, authority and right to execute, deliver and perform the obligations under this Assignment, that this Assignment has been duly authorized by all requisite

actions on the part of such warranting party, and that no remaining action or third party action is required to make this Assignment binding upon such party.

7. **Governing Law**. This Assignment shall be construed and enforced in accordance with the laws of the State of Illinois.

8. **Attorneys' Fees**. If either party commences litigation against the other for the specific performance of this Assignment, the interpretation of this Assignment, for damages for the breach hereof or otherwise for enforcement of any remedy hereunder, the parties hereto agree, in the event of any such commencement of litigation, the prevailing party shall be entitled to recover from the other party such costs and reasonable attorneys' fees as may have been incurred. Any attorneys' fees incurred in enforcing any right of indemnity set forth in this Assignment shall be recoverable and deemed to be within the scope of such indemnity and/or this attorneys' fees provision.

9. **Counterparts**. This Assignment may be executed in any number of counterparts, each of which, when so executed and when delivered, shall be an original, but all such counterparts shall together constitute but one and the same instrument.

10. **Cooperation**. After the date hereof Assignor and Assignee hereby agree to reasonably cooperate (but at no additional cost to the non-requesting party) in facilitating the transfer of the Business to Assignee, and the transaction set forth in the Sale Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGES FOLLOW]

Assignor and Assignee have executed this Assignment as of the date first written above.

**ASSIGNOR:**

THIRD FLOOR LIMITED PARTNERSHIP, an Illinois limited partnership

By: Quoin, Ltd., an Illinois corporation, its sole general partner

By: Tim A. Grodrian
Tim A. Grodrian, President

QUOIN, LTD., an Illinois corporation, its sole general partner

By: Tim A. Grodrian
Tim A. Grodrian, President

**ASSIGNEE:**

RIGHT FIELD ROOFTOPS, LLC, an Illinois limited liability company

By:______________________
Name:____________________
Title:_____________________

EXHIBIT A

Cubs Agreement

See tab 34
for agm-Ex A

# Exhibit C-2-A

# AGREEMENT

This Agreement (the "Agreement") is made and entered into as of this 27th day of January, 2004 (the "Effective Date"), by and between Chicago National League Ball Club, Inc., a Delaware corporation located at 1060 W. Addison Street, Chicago, Illinois, 60657 (the "Cubs"), and separately with each entity listed in Exhibit A hereto (the "Rooftops").

## WITNESSETH

WHEREAS, the Cubs filed a civil lawsuit against the Rooftops, entitled Chicago National League Ball Club, Inc., v. Skybox on Waveland, et al., No. 02 C 9105, in the United States District Court for the Northern District of Illinois (the "**Action**"), alleging copyright infringement, violation of the Lanham Act, misappropriation and unjust enrichment; and

WHEREAS, the Rooftops deny all claims in the Action and assert they are operating their businesses lawfully; and

WHEREAS, the parties wish to avoid the expense and uncertainty of a trial; and

WHEREAS, the parties wish to compromise and settle the dispute and to resolve all the claims that were or could have been brought in the above-captioned lawsuit without any admission of fault or determination as to the merits of the lawsuit.

NOW, THEREFORE, for and in consideration of the agreements, covenants and conditions herein, and for good and valuable consideration the sufficiency and receipt of which are expressly acknowledged, the Cubs and Rooftops (collectively, the "**Parties**"), agree as follows:

1. ***Definitions***. The terms used in this Agreement will have the meaning in Exhibit C.

2. ***Dismissal of Action***. Within three business days of execution of this Agreement, the Cubs shall dismiss each Rooftop defendant that executes this Agreement from the Action with prejudice and withdraw all pending motions or matters related to any such Rooftop. The parties understand the Action will continue against other defendants named in the Action who have not executed this Agreement. The Parties reserve all rights not specifically granted in this Agreement.

3. ***Payment obligations***.

3.1 **Royalty**.

a) Each Rooftop shall pay the Cubs, on an annual basis, an amount equal to 17% of its Gross Revenues and 11% of its Billboard Revenues, if any (together, the "Royalty").

b) The Parties agree Rooftops are currently prohibited from displaying Billboards under City of Chicago law. Nothing in this Agreement will preclude the Cubs from opposing any change to the current law, including the placement of Billboards or any other advertising visible from inside Wrigley Field on any of the buildings in the Wrigley Field Adjacent Area.

c) Payment of the Royalty shall be an independent obligation of each Rooftop and, except as provided in Section 6 hereof, shall not be reduced, offset or otherwise altered for any reason.

d) The Cubs recognize that attendance at Rooftops includes a number of groups and individuals who do not pay the Rooftop (in money, goods or services) and from which no Royalty payment will be due. The Rooftop shall provide on the Royalty Statement the name of each such non-paying group (15 guests or more) receiving complimentary use of the rooftop, the date of such use and the number of attendees.

e) The Cubs recognize that attendance at Rooftops includes fundraisers to support various organizations or groups who do not pay the Rooftop (in money, goods or services) and from which no Royalty payment will be due. The Rooftop shall provide on the Royalty Statement the name of each organization or group receiving complimentary use of the rooftop for a fundraiser or otherwise, the date of such use and the number of attendees.

f) The Cubs recognize that Rooftops receive referrals from third parties that have no relationship with their Rooftop (such as an independent event or party planner). Fees, if any, paid by customers directly to such third parties from which Rooftop receives no payment, rebate or consideration from the third party are not subject to a Royalty payment.

3.2 **Royalty due date.** The Royalty shall be paid to the Cubs on or before December 15th of each calendar year for the preceding baseball season. In addition to the Royalty payment, each Rooftop shall provide the Cubs with a written statement (the **"Royalty Statement"**). on a form to be agreed to by the parties showing: (i) attendance for the Rooftop for each regular season and postseason Game; (ii) Gross Revenues for the season; (iii) the name of each non-paying group or organization receiving complimentary use of the Rooftop, the date of such use and the number of attendees; and (iv) Billboard Revenues, if any. The Royalty Statement shall be executed in good faith by the person principally responsible for operating the Business and by one of the Rooftop owners.

3.3 **Periodic statements.** On or before each of April 15, July 15 and October 15, each Rooftop shall provide the Cubs with a good faith estimate of the Gross Revenues and Billboard Revenues, if any, received by Rooftop for the calendar year through, respectively, March 31, June 30 and September 30. Each such estimate shall be executed in good faith by the person principally responsible for operating the Business and by one of the Rooftop owners.

3.4 **Audit.**

a. **Books and Records.** Each Rooftop will maintain complete and accurate books and records regarding its Gross Revenues and Billboard Revenues, if any, (the **"Records"**). Each Rooftop will retain its Records for at least 18 months following the close of the calendar year to which the Record pertains. The Cubs and rooftops shall select, within 30 days of the Effective Date, an independent auditor ("Auditor") from among the firms of Deloitte & Touche, Ernst & Young, KPMG, Grant Thornton, or such other firm as the parties agree, to serve as the Auditor under this

Agreement. Auditor shall, when requested to do so by the Cubs and at the Cubs' cost, examine, audit, copy and verify the Records, during normal business hours at any time (no more than once each calendar year per Rooftop), for the purpose of ascertaining Rooftop Gross Revenues and Billboard Revenues, if any, for the prior calendar year. Rooftops will supply any information reasonably requested by the auditor for this purpose within 30 days of request. Except as required to disclose discrepancies discovered in the audit, the Auditor shall keep all information disclosed in the audit confidential, including all customer lists. The Auditor shall serve for 5 years from the date of his selection, at which time he may be terminated at the request of either Party and, while completing any outstanding audit, be replaced with a new Auditor chosen by the Parties within 30 days from among the same (or similar) firms as listed above. The Auditor selected shall not at any time have a business relationship, unless disclosed and the conflict is waived in writing, with any of the parties bound by this Agreement other than that as a customer who attends a Cubs game or Rooftop. The Cubs shall have 90 days from the receipt of the Royalty Payment and Royalty Statement to elect whether or not they wish to conduct an audit for that period. In the event the Cubs do not elect to conduct an audit within the 90 day period, the Royalty Payment and Royalty Statement shall be deemed accepted as accurate.

b. **Adjustments**. At the conclusion of its audit, the Auditor shall prepare a written report. In the event the audit shows an underpayment of Royalties, Rooftop shall pay the underage to Cubs within 15 days of such determination. In the event of an overpayment, the overage shall be refunded to the Rooftop or credited to the following season's royalty at the option of the Rooftops. In the event the audit shows an underpayment of Royalties of 10% or more, Rooftop shall pay, within 15 days of such determination: (i) the underpayment; (ii) 50% of the cost of the Cubs portion of the audit, and (iii) the Penalty described in Section 3.5 below.

3.5 **Penalty**. In the event an audit of a Rooftop shows an underpayment of 10% or more of any Royalty, the Rooftop shall pay Cubs a Penalty equal to a multiple of such underpayment as follows: in the first instance of underpayment, 50% of such underpayment; in the second instance of underpayment by the same Rooftop, 100% of such underpayment; in the third instance of underpayment by the same Rooftop, 150% of such underpayment; and in any subsequent instance of underpayment by the same Rooftop, an additional 50% of the underpayment.

3.6 The Rooftops may request at any time and at their own expense an internal preliminary audit by the Auditor to assist Rooftops in developing procedures or practices to comply with the provisions of this Agreement. This internal preliminary audit is solely for the use of the Rooftops and is not subject to the provisions of 3.4 and 3.5 of this Agreement.

4. *Term and termination*.

4.1 This Agreement will commence on the Effective Date and expire December 31, 2023 (the "**Term**"), unless earlier terminated as provided herein.

4.2 Expiration of this agreement at the end of its 20 year term shall be without prejudice to any Rooftop's ability to assert no license or permission from the Cubs is required for the right to sell admission to view Games from a Rooftop and without prejudice to the Cubs'

ability to assert a license or other permission from the Cubs is required for the right to sell admission to view Games from the Rooftops.

4.3 The Cubs may terminate the Agreement as to any individual Rooftop in the event of the following:

a. in the event such Rooftop fails to pay any undisputed royalty payment required under this Agreement, plus interest (computed according to the formula in 28 U.S.C. § 1961), within 90 days of the date due.

b. in the event an independent audit as set forth in Section 3.4 above finds an underpayment of more than 10% in the Royalty payment from that Rooftop three times in any five consecutive calendar years.

c. in the event such Rooftop is no longer viable as a business following expansion of the Wrigley Field bleachers pursuant to Section 6.2 below.

4.4 Notwithstanding Section 4.2 above, in the event of termination for any reason set forth in Section 4.3, no terminated Rooftop may thereafter engage in the sale of admission to view Cubs games or collect any other compensation or benefit related to activity on a rooftop on the day of a Game through December 31, 2023, provided, however, that such Rooftop may receive Billboard Revenue and, if it does, pay 11% to the Cubs as provided in Section 3, above.

5. *Transfer*.

5.1 **Transfer or assignment**. Each Rooftop may, by operation of law, sale, merger, reorganization or otherwise, transfer or assign any of its rights or delegate any of its obligations under this Agreement to any third party provided such third party agrees to accept all the Rooftop's rights and obligations under this Agreement. In addition, each Rooftop shall have the right and obligation to operate any new rooftop facility under the terms of this Agreement, except that the provisions of ¶¶ 6.1-6.4 shall not apply to any such new facility.

5.2 **Successors**. This Agreement shall bind the Cubs, each Rooftop, and their respective parent companies, subsidiaries and affiliates, and each employee, successor, assign, heir, administrator and executor of any of the foregoing.

5.3 The Rooftops agree that it is not their intent and they will not make transfers of payment or ownership for the purpose of trying to defeat any payment obligations they have under the Agreement.

6. *Wrigley Field bleacher expansion*.

6.1 If the Cubs expand the Wrigley Field bleacher seating and such expansion so impairs the view from any Rooftop into Wrigley Field such that the Rooftop's business is no longer viable unless it increases the height of its available seating, then such Rooftop may in its discretion elect to undertake construction to raise the height of its seating to allow views into Wrigley Field and the Cubs shall reimburse the Rooftop for 17% of the actual cost of such construction.

6.2 If the Cubs expand the Wrigley Field bleacher seating and such expansion so impairs the view from any Rooftop into Wrigley Field such that the Rooftop's business is no longer viable even if it were to increase its available seating to the maximum height permitted by law, and if such bleacher expansion is completed within eight years from the Effective Date, then if such Rooftop elects to cease operations before the beginning of the next baseball season following completion of such expansion, the Cubs shall reimburse that Rooftop for 50% of the royalties paid by that Rooftop to the Cubs during the time between the Effective Date and the date of expansion of the Wrigley Field bleachers. The Cubs shall pay such reimbursement to the Rooftop within 30 days of receiving notice from the Rooftop it is no longer viable and has ceased operations. Any Rooftop receiving payment from the Cubs pursuant to this provision shall cease operations for the remainder of the Term and shall not seek or accept any compensation or benefit related to activity on a Rooftop on a day of a Game.

6.3 In the event of a dispute between the Cubs and any Rooftop regarding whether such Rooftop remains viable pursuant to Section 6.1 or 6.2 or whether (or to what extent) construction of new seating is required pursuant to Section 6.1, either Party may request such dispute be resolved pursuant to binding arbitration between the Parties pursuant to Section 9 below.

6.4 If the Cubs expand the Wrigley Field bleacher seating and such expansion impairs the view from any Rooftop into Wrigley Field such that the Rooftop's Gross Revenue in the year of expansion is more than 10% below the average Gross Revenue for that Rooftop in the two years prior to expansion (normalizing for number of Games played, rain-outs and doubleheaders, playoff games, work stoppage, replacement players, and the like), then the affected Rooftop can seek a reduction in the Royalty rate for all subsequent years of the Term. Upon such request, the parties shall meet and negotiate in good faith a new Royalty. If the Parties cannot agree, then the Rooftop may submit the issue of its appropriate Royalty rate to binding arbitration pursuant to Section 9.

a. In the event any Royalty is reduced pursuant to this Section 6.3, the Cubs may seek to raise or restore the Royalty at a later date (e.g., in the event the Rooftop subsequently builds higher or the Rooftop's drop in business proves temporary). Such revision may be negotiated between the Parties or submitted to arbitration. Notwithstanding the foregoing, in no event may the Royalty exceed 17%.

6.5 Nothing in this Agreement limits the Cubs' right to seek approval of the right to expand Wrigley Field or the Rooftops' right to oppose any request for expansion of Wrigley Field.

6.6 The Cubs shall not erect windscreens or other barriers to obstruct the views of the Rooftops, provided however that temporary items such as banners, flags, and decorations for special occasions, shall not be considered as having been erected to obstruct views of the Rooftops. Any expansion of Wrigley Field approved by governmental authorities shall not be a violation of this Agreement, including this section.

7. *Marketing*. At the request of the Rooftops, acting jointly with other rooftops that have executed this Agreement, the Cubs agree to reasonable participation in marketing efforts to promote the sale of Rooftop products or services for which the Cubs are paid the Royalty set forth above. Such efforts shall be as agreed by the Parties and shall include (without limitation) the following:

7.1 WGN-TV will show and comment upon the Rooftops' facilities during broadcasts of Cubs games and the Cubs will request other Cubs television broadcasting partners to do the same. If, however, there is a Billboard or other advertising on a Rooftop, WGN will not be required to show that Rooftop or comment on it and Cubs may request others not to show or comment.

7.2 Each Rooftop shall have a license during the Term to use the Cubs' Marks identified in Exhibit B solely for the purpose of marketing and promoting the sale of admissions to its Rooftop. The Cubs will not object to the Rooftops' use, solely for the same purpose, of the term "Wrigley Field". Each use of the Cubs Marks must include a trademark notice of registration or protection as shown on Exhibit B. The Cubs may revise Exhibit B from time to time in their discretion. Rooftops may not use Cubs' Marks on merchandise, apparel, Billboard or to promote the sale of any other product or service.

7.3 From time to time during each season, the Cubs shall authorize WGN-TV or other Cubs broadcasting partner(s) to identify a phone number where fans can call to reserve Rooftop seating. Such phone number will be provided to Cubs by the Rooftops jointly. The Rooftops shall determine how calls to that phone number will be apportioned among the various Rooftop businesses.

7.4 The Rooftops shall have the right to inform the public that they are endorsed by the Cubs.

7.5 The Cubs director of marketing shall meet with Rooftops before the start of each Major League Baseball season to discuss opportunities for joint marketing.

7.6 The Cubs shall include a discussion about the Rooftops on their tour of Wrigley Field and shall include stories positive about the Rooftops in *The Vine Line*.

7.7 Each of the Rooftops may display broadcasts of Cubs games to patrons at its facility, including displaying such broadcasts on multiple television sets, without any infringement of any copyright owned by the Cubs or its assignees.

8. *Non-disparagement.*

8.1 Each Rooftop agrees that it will not publicly disparage, abuse, or insult the business of the Cubs or the moral character of the Cubs or any of its employees.

8.2 The Cubs will not publicly disparage, abuse or insult the business of any Rooftop or the moral character of any Rooftop or any Rooftop employee.

9. *Arbitration*. All disputes arising under this Agreement shall be arbitrated according to the rules of the American Arbitration Association (or such other organization as the parties agree upon), except as noted in this Section.

9.1 The arbitrators shall be chosen as follows: each of the Cubs and the Rooftop shall nominate three individuals to serve as arbitrator. None of these persons may be an employee of the Cubs or any Rooftop nor have any financial interest in the Cubs or any Rooftop. The affected Rooftop will then choose one of the three individuals nominated by the Cubs and the Cubs will choose one of the three individuals nominated by the Rooftop. The two individuals selected as arbitrators will then meet and choose a third arbitrator to complete the panel, which third arbitrator must be an independent, third

party with no relationship to or interest in (including without limitation any related or unrelated financial or business relationship) the Cubs or any Rooftop. If the arbitrators cannot agree on a third arbitrator, then each Party's arbitrator shall nominate one independent, third party who shall have no relationship to or interest in (including without limitation any related or unrelated financial or business relationship) the Cubs or any Rooftop and who is not a current or former elected official or employee of the City of Chicago or any organization or entity who has received money from the Cubs or any Rooftop. The third arbitrator shall be chosen by lot from among those two individuals.

9.2 In the event more than one Rooftop is involved in a similar dispute related to this Agreement, the Parties may agree, but are not required to, arbitrate such dispute collectively. In such event, the affected Rooftops will agree on arbitrators pursuant to Section 9.2 and collectively submit one set of choices to the Cubs.

9.3 Each Arbitration decision shall be binding on the Parties to that Arbitration and, unless the Cubs and all Rooftops agree in advance of the decision, shall be binding vis-à-vis each other only.

9.4 The losing party in the Arbitration shall bear the costs and fees of the Arbitration as well as the costs and fees of the prevailing party.

10. *Warranties; Indemnification.*

10.1 Each Party represents and warrants it has the authority to enter into this Agreement and perform all obligations hereunder, and that it will obtain any and all licenses required and other approvals required to operate under this Agreement., Each party is solely responsible for the actions and activity of its own business.

10.2 The Cubs hereby indemnify and will defend and hold harmless each Rooftop, its parent and affiliated companies, subsidiaries and each of their officers, directors and employees against every claim, action, suit, loss, damages, liability, settlement cost or expense of any kind including attorneys fees and court costs occasioned by or relating to (i) any tort that may occur to someone in Wrigley Field or resulting from conduct by someone in Wrigley Field, provided that this indemnity would not apply if any tort was occasioned by conduct by someone on a Rooftop, and (ii) any contract entered into by the Cubs to which a Rooftop is not a party.

10.3 The Rooftops hereby indemnify and will defend and hold harmless the Cubs, its parent and affiliated companies, subsidiaries and each of their officers, directors and employees against every claim, action, suit, loss, damages, liability, settlement cost or expense of any kind including attorneys fees and court costs occasioned by or relating to (i) any tort that may occur to someone on a Rooftop or resulting from conduct by someone on a Rooftop, provided that this indemnity would not apply if any tort was occasioned by conduct by someone in Wrigley Field, and (ii) any contract entered into by a Rooftop to which the Cubs is not a party.

11. *Releases.*

11.1 *Release of Cubs.* Each Rooftop, on behalf of itself, its parent companies, subsidiaries and affiliates, and all individuals holding any ownership interest in any of the foregoing, all entities under common ownership with any of the foregoing, and each employee,

successor, assign, heir, administrator, attorney, and executor of any of the foregoing, hereby release the Chicago National League Ball Club, Inc., its parent companies, directors, officers, representatives, predecessors, successors, assigns and attorneys from any claim, loss, damage, harm or cause of action relating in any way to the operation of a Rooftop business from the beginning of time until the execution of this agreement, including but not limited to, all claims which are unasserted or unknown at the execution of the agreement.

11.2 *Release of Rooftops.* The Chicago National League Ball Club, Inc., its parent companies, directors, officers, representatives, predecessors, successors, and assigns hereby release each Rooftop, its parent companies, subsidiaries and affiliates, and all individuals holding any ownership interest in any of the foregoing, all entities under common ownership with any of the foregoing, and each employee, successor, assign, heir, administrator, attorney and executor of any of the foregoing, from any claim, loss, damage, harm or cause of action relating in any way to the operation of a Rooftop business from the beginning of time until the execution of this Agreement, including but not limited to, all claims which are unasserted or unknown at the execution of the agreement.

12. *Entire agreement.* This Agreement constitutes the entire understanding of the Parties concerning the subject matter hereof and supersedes and cancels all prior or contemporaneous oral or written communications, agreements or understandings between the Parties or their predecessors. This Agreement may be modified only by a writing signed by the duly authorized representatives of the affected Party(ies).

13. *Waiver.* Failure of a Party to insist upon or enforce strict performance of any provision of this Agreement or failure, delay or omission in exercising any right with respect to any term of this Agreement, will not be construed as a waiver or relinquishment to any extent of a Party's right to assert or rely upon any such provision or right in that or any other instance.

14. *Remedies.* Except where otherwise specified, the rights and remedies granted to a Party under this Agreement are cumulative and in addition to, and not in lieu of, any other rights or remedies which the Party may possess at law or in equity.

15. *Governing Law.* This Agreement will be governed by and construed and interpreted, as if written jointly by the Parties, in accordance with the laws of the State of Illinois, without giving effect to the conflict of law principles thereof.

16. *Notice.* Notices to the Cubs will be sent to the address shown above for the Cubs with a copy to Office of the General Counsel, Chicago National League Ball Club, Inc., 435 N. Michigan Avenue, Chicago, IL, 60611, and notices to each Rooftop will be sent to the address shown on Schedule D with a copy to their attorney or representative as indicated.

17. *Construction; Severability.* In the event any provision of this Agreement conflicts with applicable law or is held invalid, illegal or unenforceable, such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the Parties in accordance with applicable law and the remaining terms, provisions, covenants and restrictions of this Agreement will remain in full force and effect. Each provision hereof is intended to be severable and the validity, legality or enforceability of any provision of this Agreement will not affect the validity, legality or enforceability of the remainder of this Agreement.

18. *Independent contracting parties*. The Parties enter this Agreement as independent contracting parties. No Party will have the power to obligate or bind any other Party in any manner whatsoever. No Party will represent itself to others as an agent or joint venturer with any other Party.

19. *Counterparts*. This Agreement may be executed in counterparts, in which case each such counterpart will be deemed an original and collectively such counterparts will form the Agreement between the parties.

20. *Headings*. Section headings are for convenience only and will in no way affect the construction or interpretation of this Agreement.

21. *Survival*. Notwithstanding anything contained herein to the contrary, the following sections of this Agreement shall survive termination or expiration of the Agreement: Section 3.4 (Audit, which shall survive for 18 months), 4.4, 5 (transferability, restriction survives only as to termination and only until December 31, 2023), 10 (indemnification, which shall survive as to claims related to events occurring prior to termination or expiration of the Agreement), 11 (releases) and any other provision for which survival is equitable.

22. *No admission or waiver*. This Agreement does not constitute an admission by any Party of any liability of any kind. Each Party expressly denies it is in any way liable to any other Party.

IN WITNESS WHEREOF, the Parties hereto have caused their duly authorized representatives to execute this Agreement as of the date first above written.

CHICAGO NATIONAL LEAGUE
BASEBALL CLUB, INC.

By: ______________________
Print Name: MARK E. McGUIRE

AIDAN, INC.:

By: ______________________
Print Name: AIDAN DUNICAN

BRIXEN IVY, L.L.C.:

By: ______________________
Print Name: MARK SCHLENKER

QUOIN, LTD.:

By: ______________________
Print Name: TIM A. GAUDRIAN

TAILGATORS ON NORTHWEST
HIGHWAY, INC.:

By: ______________________
Print Name:
JOSEPH R HARKAZ

3639 L.L.C.

By: ______________________
Print Name: James G. Lovering [illegible] MEMBER

BEYOND THE IVY, INC.:

By: ______________________
Print Name: James W. Purcell

MURPHY'S ROOFTOP COMPANY:

By: ______________________
Print Name: ELIZABETH MURPHY

SHEFFIELD-WAVELAND ROOFTOPS, INC.:

By: ______________________
Print Name: GEORGE LO[illegible]

# EXHIBIT C

## Definitions

"**Billboard**" means any advertisement legible from home plate in Wrigley Field, not currently permitted under City of Chicago law, and later erected as permitted by City of Chicago Municipal Code.

"**Billboard Revenue**" means any compensation and/or benefit received directly or indirectly by a Rooftop in connection with a Billboard, including without limitation compensation from any barter or in-kind transaction.

"**Days**" as used in this Agreement, whether capitalized or lower case, means calendar days, not business days, unless otherwise specified.

"**Game**" shall mean, without limitation, any Major League baseball games, non-professional baseball games, National Football League games, non-professional football games, concerts or any other event taking place in Wrigley Field.

"**Gross Revenue**" means any compensation and/or benefit received by a Rooftop in connection with scheduled Game days, and related to the operation of the Premises, with no deductions for expenses. Billboard Revenue is excluded from Gross Revenue. Without limiting the foregoing, Gross Revenue includes any compensation related to individual or group ticket sales, provision of rooftop, balcony or other seating to view into Wrigley Field, provision of party rooms, bars, media centers, television monitors for viewing of the games, barter and in-kind transactions, membership fees, dues, rental fees, surcharges, packages, concessions, food, beverages, souvenirs, marketing fees, sponsorship fees, advertising fees, product placement fees and any other products or services offered by, on behalf of or through a Rooftop. For the avoidance of doubt, in the event a Rooftop refunds any portion of Revenue to a customer in the event of a rainout, cancellation or other reason, then the amount actually refunded to the customer shall be excluded from the definition of Revenue. For the avoidance of doubt, any compensation and/or benefit received directly or indirectly by a rooftop in connection with any advertising other than Billboard Revenue shall be included as part of Gross Revenue. For the avoidance of doubt, Gross Revenue to a Rooftop shall not include payments to that Rooftop by an unrelated Rooftop for services provided (e.g., catering services), provided such services are not related to the operation of the Premises of the Rooftop providing the service.

"**Marks**" means the trademarks listed in Exhibit B.

"**Premises**" means, for each physical location identified in Exhibit A and the physical location of each new rooftop facility operated by a Rooftop pursuant to ¶ 5.1 of this Agreement, any portion of the building, the operation of which is (or is required to be) licensed by the City of Chicago under the Rooftop's Special Club License (as defined in Section 4-388-010(c) of the City of Chicago Municipal Code).

"**Revenue**" means Gross Revenue and Billboard Revenue.

"**Rooftop**" has the meaning stated in Exhibit A.

# Exhibit C-3

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Rooftop Event

**Joe Gutman** <jgutman@gcmlp.com> Fri, Jan 23, 2015 at 10:26 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephanie,

I am looking into dates and such but a bit concerned about finalizing.

Seems to me the Lawsuit does not make things better as it relates to potential issues for customers.

jg

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Wednesday, January 14, 2015 7:02 PM
**To:** Joe Gutman
**Subject:** Re: Rooftop Event

[Quoted text hidden]

---

Disclosure and Statement of Confidentiality

Grosvenor Securities LLC, Member FINRA, Serves as Placement Agent or Distributor for Certain Investment Products Managed/Advised by GCM Grosvenor-Affiliated Entities.

The contents of this e-mail message and its attachments (if any) may be proprietary and/or confidential and are intended solely for the addressee(s) hereof. In addition, this e-mail message and its attachments (if any) may be subject to non-disclosure or confidentiality agreements or applicable legal privileges, including privileges protecting communications between attorneys or solicitors and their clients or the work product of attorneys and solicitors. If you are not the named addressee, or if this e-mail message has been addressed to you in error, please do not read, disclose, reproduce, distribute, disseminate or otherwise use this message or any of its attachments. Delivery of this e-mail message to any person other than the intended recipient(s) is not intended in any way to waive privilege or confidentiality. If you have received this e-mail message in error, please alert the sender by reply e-mail; we also request that you immediately delete this e-mail message and its attachments (if any). Grosvenor Capital Management, L.P., GCM Customized Fund Investment Group, L.P. and their affiliated entities (collectively, “GCM Grosvenor”) reserve the right to monitor all e-mail communications through their networks. GCM Grosvenor gives no assurances that this e-mail message and its attachments (if any) are free of viruses and other harmful code.

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Fieldglass Corporate Event

**McAuliffe, Ryan** <ryan.mcauliffe@sap.com> Mon, Feb 9, 2015 at 10:05 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hi Stephanie,

We decided to go with a Chicago Cubs owned rooftop to be sure our views will not be obstructed since there are many speculations out there.

Best,

--

**Ryan McAuliffe**

Marketing Assistant

Fieldglass, Inc.

O: (312) 763-4411

M: (773) 491-1133

ryan.mcauliffe@sap.com

www.fieldglass.com

**Fieldglass is now part of SAP**

This email contains confidential information. If you are not the intended recipient, do not read, distribute or reproduce this transmission (including any attachments). If you have received this email in error, please notify the sender by email reply.

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Monday, February 09, 2015 9:42 AM

[Quoted text hidden]

[Quoted text hidden]

Skybox ON SHEFFIELD

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# July 12 Exclusive Event

**Rieke, Diana** <diana.rieke@grainprocessing.com> Fri, Oct 17, 2014 at 8:43 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephanie,

Thanks for your quick response.

Yes – a premium price for a premium game!!

A few questions:

Please confirm that this "exclusive event" includes the following as usual:

1. Buyout of facility (excluding owners)
2. Maximum Number of GPC Guests = 250
3. Pricing of $41,412.00 includes facility, all food and beverage plus service, taxes, gratuities, etc. – no additional fees.
4. View of ball game will not be restricted by construction, signage, etc. (same full view as in 2013)

Again, we will only want this contract if it is an evening game on July 12th.

If we pay in full by December 1, 2014, could we adjust the refund policy as follows (if it turns out to be a day game)?

Before April 16, 2015 - 100% (full) refund

Between April 16 and May 16, 2015 - 90% refund

Between May 16 and June 16, 2015 - 80% refund

After June 16, 2015 - No refund

Thanks for your help!

**Diana Rieke**

**Manager Marketing Communication**

Grain Processing Corporation (GPC)

diana.rieke@grainprocessing.com

Office: 563.264.4230, Mobile: 563.299.0672

---

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Tuesday, October 14, 2014 9:16 AM
**To:** Rieke, Diana
**Subject:** July 12 Exclusive Event

[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Following Up

**Christine McLaughlin** <christine.mclaughlin@livingsocial.com> Wed, Oct 15, 2014 at 2:09 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

No worries! How are you guys going to fair with the upcoming construction??
[Quoted text hidden]

Skybox ON SHEFFIELD

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# 07-10 Cubs vs. White Sox Invoice #10489, Contract and Terms

**Chrisane Jarosz** <Chrisane.Jarosz@webequitysolutions.com> Thu, Jan 8, 2015 at 1:11 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Absolutely, Stephanie!

We would like the clause within the contract to say that if signs go up causing the view to be bvlocked from Skybox, we would be able to null the contract and receive a refund.

Thank you!

Kindly,

**Chrisane Jarosz**

Marketing Specialist
1010 N. 102nd Street, Suite 100
Omaha, NE 68114
Phone: 402-344-5244
Cell: 402-659-5034

WebEquity solutions® | A Moody's Analytics Company

ICBA Preferred Service Provider®

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Thursday, January 08, 2015 1:01 PM
**To:** Chrisane Jarosz
**Subject:** Re: 07-10 Cubs vs. White Sox Invoice #10489, Contract and Terms

[Quoted text hidden]

This email and its contents are proprietary to WebEquity Solutions and therefore is privileged, confidential, and subject to copyright belonging to WebEquity Solutions. This email is intended solely for the individual or entity to which it is addressed. If you are not the intended recipient of the email, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this email is strictly prohibited and may be unlawful. If you have received this email in error, notify the sender immediately and permanently delete the original and any copy of the email and attachments.

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Event/Group Pricing 2015 Season

**Whitney Taylor** <whitney.taylor.purdue@gmail.com> Wed, Oct 22, 2014 at 11:58 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hey Stephanie,

My name is Whitney. I contacted you a few weeks ago about holding a wedding/reception at one of your famous rooftops. I loved both venues that you sent. The biggest detail that would give me the most preference would be field view due the new renovations. Do you know how the new field renovations will effect you?

Also, I was hoping to get a definite quote for entire venue rental vs. individual group ticket pricing for June 13, 2015 vs. Cincinnati Reds.

Thanks so much for your time, and I look forward to hearing back from you!
Whitney

Whitney Taylor
whitney.taylor.purdue@gmail.com

Sent from my iPhone
[Quoted text hidden]

<LakeviewBaseballClub2014.pdf>

<LBC 2014 Menu.pdf>

<SOS Brochure 2014.pdf>

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# 6.25.15 Vs. Dodgers

**Tatiana Magana** <tatybox@yahoo.com> Thu, Oct 30, 2014 at 9:41 AM
Reply-To: Tatiana Magana <tatybox@yahoo.com>
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Thanks for checking in Stephanie. Just a few questions. Is there going to be new construction at the park? Will the new changes interfere with the rooftop experience? We are getting married a few days later and truth be told the first quote was above what we can afford right now. we are going to weight our options and see if we can get a more economical venue for that day. I will keep you guys in my files just in case thanks
Tatiana & Terry

[Quoted text hidden]

Skybox ON SHEFFIELD

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# 2015 Tickets

**Ryan Melchiori** <ryan.melchiori@gmail.com> Thu, Oct 30, 2014 at 12:07 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hi Stephanie,

One thing I am a little apprehensive about is the renovations going on at Wrigley Field right now. I am under the impression that no one knows where future signage that could interfere with the views from rooftops may go up. I would hate to commit to a rooftop and wind up with with obstructed views into the stadium. Do you have any knowledge about this situation?

Thanks.
[Quoted text hidden]

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# 07-10 Cubs vs. White Sox Invoice #10484, Contract and Terms

**Rothgery, Bill** <Bill.Rothgery@crothall.com> Fri, Dec 19, 2014 at 4:19 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephanie,

The view is not going to be blocked, correct?

*Bill*

Bill Rothgery

Vice President Operations Support

Healthcare Technology Solutions

Crothall Healthcare

Cell: (708) 557-1118

Email: bill.rothgery@crothall.com

crothall healthcare

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Thursday, December 18, 2014 1:57 PM

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Fieldglass Corporate Event

**McAuliffe, Ryan** <ryan.mcauliffe@sap.com> Mon, Dec 29, 2014 at 10:45 AM
To: "info@skyboxonsheffield.com" <info@skyboxonsheffield.com>

Good morning Skybox on Sheffield representatives,

My name is Ryan and I am the Marketing Assistant at Fieldglass, Inc. We are having a corporate event this upcoming June and would love to get more information about your venue. Below are some important details:

-75-200 guests

-Date: June 11, 2015

-Would like a theme menu and open bar

-Appreciate access to an outdoor terrace or rooftop

-Is there a way to reserve specific space for just our event?

-May I set up an appointment in the next week or so to view the space?

-Does this space offer elevator access?

My main concern is, will the new jumbotron and bleachers be blocking the view from this space? It would be wonderful to get more information and a quote for this venue.

Thank you for your time and I look forward to hearing from you.

Best,

--

**Ryan McAuliffe**

Marketing Assistant

Fieldglass, Inc.

O: (312) 525-9668

M: (773) 491-1133

ryan.mcauliffe@sap.com

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Game on May 16th

**Joe Harkins** <joseph_harkins@yahoo.com> Sun, Jan 4, 2015 at 12:42 PM
Reply-To: Joe Harkins <joseph_harkins@yahoo.com>
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephaine,
Thanks for the speedy reply. Is there any worry that the renovations to Wrigley will effect your view?
Joe

**From:** Stephanie Zblewski <szblewski@skyboxonsheffield.com>
**To:** Joe Harkins <joseph_harkins@yahoo.com>
**Sent:** Saturday, January 3, 2015 9:19 PM
**Subject:** Re: Game on May 16th
[Quoted text hidden]

SKYBOX ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

---

# MGM Grand Wrigley Field Roof Top

---

**Del Santo, Jenny** <JDelSanto@lv.mgmgrand.com> Tue, Jan 6, 2015 at 4:47 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hi Stephanie – are you guys going to be impacted on any billboards with these 2 locations. I know it's been a topic but wanted to know where it stands with your establishments.

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Monday, December 29, 2014 1:09 PM

[Quoted text hidden]

[Quoted text hidden]

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Rooftop

**Joe Sullivan** <Joe.Sullivan@tevapharm.com> Wed, Jan 7, 2015 at 12:09 PM
To: "Stephanie Zblewski (External)" <szblewski@skyboxonsheffield.com>

Hi Stephanie – has anything changed with your rooftops? Are you still open for the 2015 season? Is there anything blocking the view? Thanks.

**From:** Stephanie Zblewski (External) [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Monday, November 24, 2014 2:16 PM

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# 07-10 Cubs vs. White Sox Invoice #10484, Contract and Terms

**Rothgery, Bill** <Bill.Rothgery@crothall.com> Fri, Dec 19, 2014 at 4:19 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephanie,

The view is not going to be blocked, correct?

*Bill*

Bill Rothgery

Vice President Operations Support

Healthcare Technology Solutions

Crothall Healthcare

Cell: (708) 557-1118

Email: bill.rothgery@crothall.com

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Thursday, December 18, 2014 1:57 PM

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# 2015 Rooftop Event- Baum Realty

**Mike Demetriou** <mike@baumrealty.com> Thu, Jan 22, 2015 at 10:33 AM
To: Stephanie Zblewski <stephanie@lakeviewbaseballclub.com>

Stephanie,

Thank you, but you should know that I had better language than that in last year's agreement with you. The language below may be acceptable to some of your clients, but it wouldn't work for me. Regardless, it isn't just an issue of price, it is that if you are obstructed, I cannot have the event - and I need to have the event. A refund is not valuable. I need the event to occur, unobstructed.

**Mike Demetriou**

*Chief Operating Officer*

Baum Realty Group, LLC

1030 W. Chicago Ave. Suite 200

Chicago, IL 60642

(p) 312.275.3101

(f) 312.612.1155

(e) mike@baumrealty.com

**From:** Stephanie Zblewski [mailto:stephanie@lakeviewbaseballclub.com]
**Sent:** Thursday, January 22, 2015 10:30 AM

[Quoted text hidden]

[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# 2015 Rooftop Event

**Tiffany Tewell** <ttewell@mdd.com> Thu, Jan 22, 2015 at 12:06 PM
To: Stephanie Zblewski <stephanie@lakeviewbaseballclub.com>

Thank you Stephanie, they appreciate the tickets to a May game. Unfortunately, if the view is obstructed the partners would like to cancel our event and have the deposit returned. I know its the worst case but if you're confident the view will not be obstructed we feel this should not be a problem to offer. Let me know if this is possible. Thank you.

[Quoted text hidden]

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# 2015 Tickets

**Ryan Melchiori** <ryan.melchiori@gmail.com> Thu, Oct 30, 2014 at 12:07 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hi Stephanie,

One thing I am a little apprehensive about is the renovations going on at Wrigley Field right now. I am under the impression that no one knows where future signage that could interfere with the views from rooftops may go up. I would hate to commit to a rooftop and wind up with with obstructed views into the stadium. Do you have any knowledge about this situation?

Thanks.
[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Available Tickets

**Christopher Mantica** <chris.mantica@gmail.com> Tue, Jan 20, 2015 at 9:03 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Yes, thank you for the information. I will try to get the others to give me a decision one way or the other as soon as possible.

I was also reading some information about how they were doing some renovations to Wrigley field in right and left field, and wanted to see if there would be any future obstructions that you were aware of from your venues.

Thanks Again for the Information,
Chris Mantica
[Quoted text hidden]

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# corporate event 5/16/15

**Cross, Jennifer** <Jennifer.Cross@sf-fl.com> Fri, Jan 9, 2015 at 11:19 AM
To: "info@skyboxonsheffield.com" <info@skyboxonsheffield.com>

I am looking to book a company event for our company, Smithfield Farmland, with approximately 100 attendees on the rooftop. In addition to wondering if you have availability, I would like to know if it's possible to be separate from other parties that may be booked the same day, or if we would be intermingled. Would the 100 people fit on one level? Can we bring in our own food for you to prepare (we are a pork company and will be entertaining clients and would like to have some of our products available)? Finally, is every spot on the rooftop unobstructed and are there TVs on the rooftop?

**Jennifer Cross**

SMITHFIELD FARMLAND SALES CORP.

Associate Brand Manager – Foodservice & Industrial

P: 816-243-2796

E: Jennifer.Cross@sf-fl.com

Smithfield Farmland

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Event/Group Pricing 2015 Season

**Whitney Taylor** <whitney.taylor.purdue@gmail.com> Wed, Oct 22, 2014 at 11:58 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hey Stephanie,

My name is Whitney. I contacted you a few weeks ago about holding a wedding/reception at one of your famous rooftops. I loved both venues that you sent. The biggest detail that would give me the most preference would be field view due the new renovations. Do you know how the new field renovations will effect you?

Also, I was hoping to get a definite quote for entire venue rental vs. individual group ticket pricing for June 13, 2015 vs. Cincinnati Reds.

Thanks so much for your time, and I look forward to hearing back from you!
Whitney

Whitney Taylor
whitney.taylor.purdue@gmail.com

Sent from my iPhone
[Quoted text hidden]

<LakeviewBaseballClub2014.pdf>

<LBC 2014 Menu.pdf>

<SOS Brochure 2014.pdf>

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Fieldglass Corporate Event

**McAuliffe, Ryan** <ryan.mcauliffe@sap.com> Mon, Dec 29, 2014 at 10:45 AM
To: "info@skyboxonsheffield.com" <info@skyboxonsheffield.com>

Good morning Skybox on Sheffield representatives,

My name is Ryan and I am the Marketing Assistant at Fieldglass, Inc. We are having a corporate event this upcoming June and would love to get more information about your venue. Below are some important details:

-75-200 guests

-Date: June 11, 2015

-Would like a theme menu and open bar

-Appreciate access to an outdoor terrace or rooftop

-Is there a way to reserve specific space for just our event?

-May I set up an appointment in the next week or so to view the space?

-Does this space offer elevator access?

My main concern is, will the new jumbotron and bleachers be blocking the view from this space? It would be wonderful to get more information and a quote for this venue.

Thank you for your time and I look forward to hearing from you.

Best,

--

**Ryan McAuliffe**

Marketing Assistant

Fieldglass, Inc.

O: (312) 525-9668

M: (773) 491-1133

ryan.mcauliffe@sap.com

www.fieldglass.com

**Fieldglass is now part of SAP**

This email contains confidential information. If you are not the intended recipient, do not read, distribute or reproduce this transmission (including any attachments). If you have received this email in error, please notify the sender by email reply.

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Following Up

**Christine McLaughlin** <christine.mclaughlin@livingsocial.com> Wed, Oct 15, 2014 at 2:09 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

No worries! How are you guys going to fair with the upcoming construction??
[Quoted text hidden]

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Game on May 16th

**Joe Harkins** <joseph_harkins@yahoo.com> Sun, Jan 4, 2015 at 12:42 PM
Reply-To: Joe Harkins <joseph_harkins@yahoo.com>
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephaine,
Thanks for the speedy reply. Is there any worry that the renovations to Wrigley will effect your view?
Joe

---

**From:** Stephanie Zblewski <szblewski@skyboxonsheffield.com>
**To:** Joe Harkins <joseph_harkins@yahoo.com>
**Sent:** Saturday, January 3, 2015 9:19 PM
**Subject:** Re: Game on May 16th
[Quoted text hidden]

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Group Reservation

**Dominic Lessard** <dlessard@samplingproduct.com> Tue, Jan 13, 2015 at 12:21 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Thank you Stephanie,

Was the issue with the Cubs Team resolved where it was not sure if Rooftops would still be able to operate or not for this year?

---

**Dominic Lessard**

Développement d'affaires | Business Development

dlessard@samplingproduct.com

T.: (800) 933-5232, ext 207
C.: (418) 215-1152
F.: (418) 227-3188

Visit our website! | Visitez notre site Internet ! **www.samplingproduct.com**

---

**De :** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Envoyé :** January 13, 2015 1:01 PM
**À :** Dominic Lessard
**Objet :** Re: Group Reservation

[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# July 12 Exclusive Event

**Rieke, Diana** <diana.rieke@grainprocessing.com> Fri, Oct 17, 2014 at 8:43 AM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Stephanie,

Thanks for your quick response.

Yes – a premium price for a premium game!!

A few questions:

Please confirm that this "exclusive event" includes the following as usual:

1. Buyout of facility (excluding owners)

2. Maximum Number of GPC Guests = 250

3. Pricing of $41,412.00 includes facility, all food and beverage plus service, taxes, gratuities, etc. – no additional fees.

4. View of ball game will not be restricted by construction, signage, etc. (same full view as in 2013)

Again, we will only want this contract if it is an evening game on July 12th.

If we pay in full by December 1, 2014, could we adjust the refund policy as follows (if it turns out to be a day game)?

Before April 16, 2015 - 100% (full) refund

Between April 16 and May 16, 2015 - 90% refund

Between May 16 and June 16, 2015 - 80% refund

After June 16, 2015 - No refund

Thanks for your help!

**Diana Rieke**

**Manager Marketing Communication**

Grain Processing Corporation (GPC)

diana.rieke@grainprocessing.com

Office: 563.264.4230, Mobile: 563.299.0672

---

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Tuesday, October 14, 2014 9:16 AM
**To:** Rieke, Diana
**Subject:** July 12 Exclusive Event

[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# MGM Grand Wrigley Field Roof Top

**Del Santo, Jenny** <JDelSanto@lv.mgmgrand.com> Tue, Jan 6, 2015 at 4:47 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hi Stephanie – are you guys going to be impacted on any billboards with these 2 locations. I know it's been a topic but wanted to know where it stands with your establishments.

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Monday, December 29, 2014 1:09 PM

[Quoted text hidden]

[Quoted text hidden]

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Opening Day

**Ed McDevitt** <mcdevitt.ed@gmail.com> Fri, Jan 16, 2015 at 8:06 AM
To: Stephanie Zblewski <stephanie@lakeviewbaseballclub.com>

Hi,Stephanie.

I already have my usual suspects asking when they'll hear about Cubs Opening Day plans. So I have to get moving.

I haven't kept track of where Lakeview Baseball Club is with respect to the changes at Wrigley, but then I haven't heard that you're not going ahead with the season. So I'm working on the assumption that you are.'

Last year I think we ended up with a group of 25 - 30 and you had set up a sign-up link for me so that my people could get on the list. Can we do it the same way this year? Let's start with 25 openings. I might need more, but over time I've lost some of my regulars while adding new ones.

Let me know if things are going to work out.

Thanks. Hope you are well. Happy New Season!

--

Public Art
Chicago

Ed McDevitt
Executive Director
Public Art Chicago
Suite 204
1147 West Ohio Street
Chicago, IL 60642
**(630) 651-6227 (C)**

Stephanie Zblewski <szblewski@skyboxonsheffield.com>

# Questions regarding 4/17/15 / Your Facility

**Margy Simco** <MSimco@sandiego.org> Wed, Jan 21, 2015 at 12:05 PM
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Hi Stephanie,

Thank you for your e-mail. We are looking through the information from you and will hopefully decide by the end of the week on our venue.

I have a quick question for you:

- Do you have any knowledge or information regarding any view obstructions (cranes or the like) due to the construction that's going on? Specifically on/around 4/17/15.

Please let me know at your earliest convenience.

Thank you,

**Margy Simco** | Citywide Sales Coordinator
San Diego Tourism Authority
676 N. Michigan Ave. ▪ Suite 3150 ▪ Chicago, IL 60611
tel (312) 943-5399 ▪ fax (312) 943-0399

**From:** Stephanie Zblewski [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Wednesday, January 21, 2015 10:25 AM
**To:** Margy Simco
**Subject:** Re: Questions regarding 4/17/15 / Your Facility

[Quoted text hidden]

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Re: LVBC: August 17, 2013

**Hafertepe, Scott** <shafertepe@ucityschools.org> Mon, Jan 12, 2015 at 1:39 PM
To: Stephanie Zblewski <stephanie@lakeviewbaseballclub.com>

Hi Stephanie,
Thanks for the info! Are there any concerns with the Cubs blocking the view with advertisements or scoreboards?

Thanks,

Scott Hafertepe
Chief Financial Officer
School District of University City
(314) 290-4031

[Quoted text hidden]

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Re: September Cubs Game

**ICRI Chicago Chapter Treasurer** <treasurer@icrichicago.org> Wed, Jan 21, 2015 at 4:19 PM
Reply-To: treasurer@icrichicago.org
To: Stephanie Zblewski <szblewski@skyboxonsheffield.com>

Thanks, Stephanie. We have a board meeting next month to vote on the event. Can you also comment on a few questions??

- Will there be any issues with the view given the changes to Wrigley Field?
- Are there any assurances that if there are issues we will be refunded?

Thanks.

Sean Meracle
Chapter Treasurer
ICRI - Chicago Chapter
PO Box 578625
Chicago, IL 60657
*mobile* - (312) 656-0622
*email* - treasurer@icrichicago.org

---

**From**: "Stephanie Zblewski" <szblewski@skyboxonsheffield.com>
**Sent**: Wednesday, January 21, 2015 2:47 PM
[Quoted text hidden]
[Quoted text hidden]

Skybox ON SHEFFIELD

**Stephanie Zblewski <szblewski@skyboxonsheffield.com>**

# Rooftop

**Joe Sullivan** <Joe.Sullivan@tevapharm.com> Wed, Jan 7, 2015 at 12:09 PM
To: "Stephanie Zblewski (External)" <szblewski@skyboxonsheffield.com>

Hi Stephanie – has anything changed with your rooftops? Are you still open for the 2015 season? Is there anything blocking the view? Thanks.

**From:** Stephanie Zblewski (External) [mailto:szblewski@skyboxonsheffield.com]
**Sent:** Monday, November 24, 2014 2:16 PM

[Quoted text hidden]

[Quoted text hidden]
[Quoted text hidden]