**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RIGHT FIELD ROOFTOPS, LLC, ) | | |
| d/b/a SKYBOX ON SHEFFIELD; ) | | |
| RIGHT FIELD PROPERTIES, LLC; ) | | |
| 3633 ROOFTOP MANAGEMENT, LLC, ) | | |
| d/b/a LAKEVIEW BASEBALL CLUB; and ) | | |
| ROOFTOP ACQUISITION, LLC, ) | Case No. 15cv551 | |
| ) | | |
| Plaintiffs, ) | Hon. Virginia M. Kendall | |
| ) | | |
| v. ) | Magistrate Judge Michael T. Mason | |
| ) | | |
| CHICAGO BASEBALL HOLDINGS, LLC; ) | | |
| CHICAGO CUBS BASEBALL CLUB, LLC; ) | | |
| WRIGLEY FIELD HOLDINGS, LLC; and ) | | |
| THOMAS S. RICKETTS, ) | | |
| ) | | |
| Defendants. ) | | |

**REPLY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

The plaintiffs, (i) Right Field Rooftops, LLC, d/b/a Skybox on Sheffield, (ii) Right Field Properties, LLC, (iii) 3633 Rooftop Management, LLC, d/b/a Lakeview Baseball Club, and (iv) Rooftop Acquisition, LLC (collectively, "Plaintiffs"), for their Reply in Support of their Motion for Temporary Restraining Order (the "TRO Motion"), state as follows:

**I.        Introduction**

The Defendants assert that the Plaintiffs' TRO Motion should be denied for three reasons which lack merit: (i) the Plaintiffs will supposedly not be irreparably harmed before a preliminary injunction hearing, (ii) the Plaintiffs' purported delay in filing their TRO Motion shows that there is no emergency, and (iii) the Defendants are willing to proceed with an expedited preliminary injunction hearing. For the reasons that follow, none of these arguments

defeat the need for temporary injunctive relief, nor do these arguments overcome the Plaintiffs' strong showing in favor of a TRO.

## II.     Irreparable Harm Absent Immediate Injunctive Relief

The Plaintiffs establish in their TRO Motion that the installation of a video board, directly in front of their Rooftop Businesses, will completely destroy their businesses and make it impossible to survive as operating Rooftop Business entities. This unavoidable fact – that there can be no Rooftop Business without views into Wrigley Field – has been used by the Cubs Organization's executives numerous times over the last several years while threatening to destroy the Rooftop Businesses, and this fact it is not denied anywhere in the Defendants' Opposition Brief.

Since the parties agree on the fact that a Rooftop Business cannot survive without views into Wrigley Field, since construction is undeniably underway at Wrigley Field, and since the Defendants do not deny anywhere in their Opposition Brief that a 2,200-square-foot video board is being installed directly in front of the Plaintiffs, the notion that the Plaintiffs will not suffer irreparable harm before a preliminary injunction hearing takes place is absurd unless the Defendants are willing to agree not to install the video board before the preliminary injunction hearing takes place. Absent such an agreement, neither the Plaintiffs nor this Court actually knows whether that video board will be installed this afternoon, tomorrow, this weekend, or next week, and the installation thereof is death to the Plaintiffs' business.

The Defendants illogically argue that because there are no baseball games until April 5, 2015, the Rooftop Businesses are "closed" and cannot possibly be forced out of business in the next several weeks. This argument is misleading and incorrect. The Plaintiffs book events months in advance, as reflected by the affidavits and exhibits attached to the TRO Motion. The

Plaintiffs are having a very difficult time booking events based on the mere threat of having the video board installed in front of their buildings. Many customers are refusing to book, others are demanding refunds, and some are going to the Rooftop Businesses that the Defendants just bought and "unblocked." But none of this reaches the heart of the issue: the Plaintiffs will be unable to sell *any* tickets if the video board is installed, and their very purpose for existence will cease. This is why the TRO is necessary – to let the Plaintiffs continue to operate and sell tickets until a preliminary injunction hearing takes place. Only the Defendants know whether the video board will be installed this afternoon, tomorrow, next week or next month. But once installed, it is lights out for the Plaintiffs – and that is why the TRO Motion demonstrates irreparable harm.

If the Defendants truly wish to demonstrate that there will be no irreparable harm to the Plaintiffs between now and a preliminary injunction hearing, they should represent to this Court, and agree to an order that states, that they are not going to install the video board until a date certain which is after the preliminary injunction hearing. If the Defendants are not willing to agree to such an order, they clearly intend to install the video board sooner, they intend to destroy the Plaintiffs' business sooner, and consequently a TRO is necessary to prevent same.

**III.     The Plaintiffs Did Not Delay in Seeking Injunctive Relief**

Conspicuously missing from the Defendants' Opposition Brief is the fact that the Defendants did not pull permits to install their signs until January 26, 2015. <u>Exhibit A</u>. This fact defeats any argument that the Plaintiffs waited too long to seek a TRO. The sign permit was pulled a week *after* the Complaint was filed, and just two weeks before the Plaintiffs' TRO Motion was filed. Without addressing the merits of the TRO Motion, and without defending their wrongful conduct, the Defendants argue that a TRO should not be granted because the

Plaintiffs took too long to file their Complaint or to bring their TRO Motion. This argument ignores many facts.

The Plaintiffs did not "delay" in doing anything. It was not until December 4, 2014 that the Defendants announced their decision to move the video board *directly in front of the Plaintiffs*. The Defendants made this decision because (i) they acquired other Rooftop Businesses on Sheffield Avenue which they wanted to unblock, and (ii) they realized that the Plaintiffs were not going to give in to the Defendants' strong-arm tactics. This announcement on December 4, 2014 was the straw that broke the camel's back which forced the Plaintiffs to make the very difficult business decision to pursue their legal rights in court.

The Defendants cannot say with a straight face that it took the Plaintiffs too long after the December 4, 2014 announcement for the Plaintiffs to file suit. The Complaint is 58 pages in length, consisting of 108 paragraphs of facts and 9 distinct theories of recovery, none of which are "cookie cutter" in nature. [Doc. 1.] This Complaint was prepared and filed just *six weeks* after the Defendants announced the total destruction of the Plaintiffs, six weeks which spanned the heart of the winter holiday season. Claiming that this was somehow too slow, when viewed in comparison to the years of wrongful and anticompetitive conduct, is simply unfair and unprofessional. Who is to say that the Defendants did not make their announcement just before the holidays for this very reason – to impose unnecessary burdens on the Plaintiffs and their counsel over the holidays?

The same thing can be said for the Defendants' argument that the TRO Motion somehow took too long to file, and that this somehow reflects the lack of a true emergency. The TRO Motion was filed just *three weeks* after the Complaint was filed, and just two weeks after the Defendants pulled permits to install their signs that will destroy the Plaintiffs. The

Memorandum in Support of the Plaintiffs' TRO Motion is 50 pages in length, includes an in-depth examination of numerous complex statutes such as the Sherman Act's prohibition on attempted monopolization, and summarizes nothing less than three years of wrongdoing by the Defendants. The Defendants' suggestion that a TRO should not be issued because a complex, 50-page TRO Motion took two weeks to prepare, is meritless and in poor taste.

There have been no delays. And it should not be forgotten that none of this would have been necessary if the Defendants had respected their contractual obligations and had refrained from engaging in prohibited anticompetitive conduct. It should also not be forgotten that the Defendants are in exclusive control over the timing of the video board's installation, and can easily delay that sign until a preliminary injunction hearing takes place if they so choose. The TRO Motion should be decided on its merits, and not on some irrelevant argument about timing.

### IV. A Prompt Preliminary Injunction Hearing Does Not Eliminate the Need for a TRO

The Plaintiffs welcome the opportunity for a prompt hearing on their request for a preliminary injunction. However, the Defendants' offer to participate in an expedited preliminary injunction hearing does not eliminate the need for a TRO. Once again, if the video board is installed, the Plaintiffs are destroyed – a fact utterly ignored by the Defendants. Moreover, the timing of the installation of the video board is completely within the control of the Defendants, and there is no assurance that the Defendants will not install the video board before the preliminary injunction hearing, hence the need for a TRO.

Moreover, it is not realistic to expect a preliminary injunction hearing to take place in less than several weeks from now. The Defendants somehow claim that the Plaintiffs already submitted all their evidence, but this is not true. There are numerous witnesses who are not under the Plaintiffs' control whose testimony is necessary for a preliminary injunction hearing.

5

The Plaintiffs will need leave to subpoena these witnesses for hearing, and will need to subpoena documentary evidence from these witnesses beforehand. Similarly, there is extensive evidence solely in the possession of the Defendants or their contractors and agents. This evidence also needs to be obtained before the preliminary injunction hearing. Therefore, while an expedited preliminary injunction hearing is highly desirable, and the Plaintiffs will do everything in their power to secure the necessary evidence to present their case as soon as possible, the timing of that hearing must take into account the need for certain preliminary, limited discovery.

**V.     Case Law in Defendants' Opposition Brief**

Little need be said of the myriad trial-level orders cited by the Defendants in their Opposition Brief. These cases all stand for the proposition that a TRO is intended to preserve the status quo until a preliminary injunction hearing takes place. *See e.g. Fleetwood Packaging v. Hein*, 2014 WL 7146493 at *2 (N.D. Ill. Dec. 15, 2014). Under the facts presented in the TRO Motion, all of the cases cited by the Plaintiffs support the need to maintain the status quo which has existed for years and years: Wrigley Field without video boards; two parties continuing to observe a 20-year contract; competition between Rooftop Businesses without price fixing.

**VI.     Conclusion**

A TRO is critical to ensure that the Plaintiffs are not destroyed before a preliminary injunction hearing takes place. Despite the Defendants' assertions that the baseball season is 6 weeks away, the Defendants do not state anywhere when the signs will be installed, and *that* is what will destroy the Plaintiffs, not opening day. The status quo needs to be maintained until a preliminary injunction hearing takes place. Since 2004 the parties have respected a contractual arrangement which did not include video boards blocking the Plaintiffs' views. Certainly the Defendants can survive for a few more weeks without one video board.

WHEREFORE, the plaintiffs, Right Field Rooftops, LLC, d/b/a Skybox on Sheffield, Right Field Properties, LLC, 3633 Rooftop Management, LLC, d/b/a Lakeview Baseball Club, and Rooftop Acquisition, LLC, respectfully request that this Honorable Court enter a Temporary Restraining Order requiring that the defendants, Chicago Baseball Holdings, LLC, Chicago Cubs Baseball Club, LLC, Wrigley Field Holdings, LLC and Thomas S. Ricketts (collectively, õDefendantsö), immediately discontinue the installation of õjumbotrons,ö õvideo boards,ö billboards, advertisements, and any other type of signage in front of Plaintiffsø properties located across from Wrigley Field, which signage will obstruct Plaintiffsø views into Wrigley Field, and grant any additional relief deemed just and appropriate.

Respectfully Submitted,

Right Field Rooftops, LLC, d/b/a Skybox on Sheffield, Right Field Properties, LLC, 3633 Rooftop Management, LLC, d/b/a Lakeview Baseball Club, and Rooftop Acquisition, LLC

*/s/ Thomas M. Lombardo*
By: Thomas M. Lombardo
One of their Attorneys

Thomas M. Lombardo (6279247)
Abraham Brustein (327662)
Di Monte & Lizak, LLC
216 Higgins Road
Park Ridge, IL 60068
847-698-9600 tel
847-698-9623 fax
tlombardo@dimontelaw.com
abrustein@dimontelaw.com