**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RIGHT FIELD ROOFTOPS, LLC, | ) | |
| d/b/a SKYBOX ON SHEFFIELD; | ) | |
| RIGHT FIELD PROPERTIES, LLC; | ) | |
| 3633 ROOFTOP MANAGEMENT, LLC, | ) | |
| d/b/a LAKEVIEW BASEBALL CLUB; and | ) | |
| ROOFTOP ACQUISITION, LLC, | ) | Case No. 15cv551 |
| | ) | |
| Plaintiffs, | ) | Hon. Virginia M. Kendall |
| | ) | |
| v. | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| CHICAGO BASEBALL HOLDINGS, LLC; | ) | |
| CHICAGO CUBS BASEBALL CLUB, LLC; | ) | |
| WRIGLEY FIELD HOLDINGS, LLC; and | ) | |
| THOMAS S. RICKETTS, | ) | |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENT TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER**

The plaintiffs, (i) Right Field Rooftops, LLC, d/b/a Skybox on Sheffield, (ii) Right Field Properties, LLC, (iii) 3633 Rooftop Management, LLC, d/b/a Lakeview Baseball Club, and (iv) Rooftop Acquisition, LLC (collectively, "Plaintiffs"), for their Supplement to their Motion for Temporary Restraining Order, submit the following:

**SUPPLEMENT**

The decision in *Elliott v. United Center*, 126 F.3d 1003 (7th Cir. 2001), has no application to the dispute between the parties in this case. In *Elliott*, the plaintiffs were vendors who sold peanuts to the general public before those customers entered the United Center to watch Bulls games, Blackhawks games and other events. *Id.* at 1003. After the United Center prohibited all outside food and beverage, the plaintiffs alleged that the United Center monopolized food sales inside the United Center. *Id.* at 1003-04. Specifically, the plaintiffs claimed that the relevant market for their Sherman Act claim was the market for food concessions at the United Center. *Id.*

The trial and appellate courts rejected this market definition. The appellate court stated,

> No one argues that the United Center is monopolizing the market for snack food in near west Chicago, because such an argument would be ludicrous on its face. The United Center is obviously not monopolizing the market for peanuts: it is staying strictly out of the peanut business… [and thus] both price and output of peanuts in any geographic area that would be meaningful under the antitrust laws (at least Chicago, we presume) are totally unaffected by the United Center's policies.

*Id.* at 1005.

Serious differences exist between the facts (and allegations) in *Elliott* versus those in the instant case. Under the Plaintiffs' theory that there is a single market – Cubs tickets - the Cubs are very much in the Cubs ticket business, with 93% of that market share. Therefore, entirely unlike the United Center which did not sell peanuts, the Cubs are direct competitors with the Plaintiffs and the other Rooftop Businesses in the Cubs tickets market. Furthermore, the Cubs expressly stated their intention to control and raise Cubs ticket prices, and their conduct in attempting to destroy competitor Rooftop Businesses was aimed specifically at reaching that

unlawful goal. Therefore, price and output of Cubs tickets is very much an issue in this case, while it was not an issue whatsoever in the *Elliott* case.[1]

Under the Plaintiffs' alternative theory, that there is a separate market for the Rooftop experience, *Elliott* is likewise irrelevant. Once again, the Cubs (or its affiliates) are in the Rooftop Business. They have acquired an interest in four Rooftop Businesses – 800 of 3,000 total seats – 26.7% of the market, in a very short period of time. In *Elliott*, the United Center did not sell peanuts outside the stadium. Indeed, they did not even sell peanuts for consumption inside the stadium. The parties in *Elliott* were not competitors in a market – the parties in this case certainly are. Moreover, price and output of Rooftop tickets is very much at issue here, unlike price and output of peanuts in *Elliott*. The Cubs have obtained control over 26.7% of the relevant market, but more importantly, they were and are attempting to obtain much, much more. This fact takes the instant case entirely out of the purview of *Elliott*.

The *Elliott* court also discusses the fact that restaurants and movie theaters have a monopoly over the prices of their food and drink. *Id.* at 1005. That fact also has no relevance here. The Cubs can charge whatever they want for food and drink inside Wrigley Field. The Cubs can also charge whatever they want for tickets to Wrigley Field. Indeed, the Cubs can even charge whatever they want for tickets to the Rooftop Businesses they now control. But the critical difference between the Cubs and movie theaters or restaurants is that the Cubs have existing competition for the sale of tickets. For whatever reason, however history unfolded, there are Rooftop Businesses. There is marketplace competition. The existence of that competition takes this case out of *Elliott*'s reasoning.

---

[1] It should also be noted that *Elliott* was an actually monopolization case, not an attempt to monopolize case. The significance in this distinction is that in an attempt case, success is not relevant – the intent is the critical factor. The Cubs intent (and the success is yet to be determined) was admittedly to control and raise prices for Cubs tickets through the elimination of competition.

2

The *Elliott* court cited *Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250 (7th Cir. 1995), in discussing what a relevant market is. The *Israel Travel* case is informative on why *Elliott* does not apply here. In *Israel Travel*, the plaintiff attempted to establish that the relevant market for its Sherman Act claim was, essentially, prepaid tours of Israel from the United States. *Id.* at 1252. The court rejected this proposed market, stating,

> These litigants do not own or control the assets that produce output in a travel market: fleets of airplanes, chains of hotels, Israel and its history. Anyone can buy tickets, rent rooms, and conduct tours. If these firms were to vanish tomorrow production would be unaffected.

*Id.* at 1253. This is a far cry from the facts at hand.

Here, the litigants do own or control the assets that produce output in a specific market, the grandstand seats in either the Cubs tickets market or Rooftop tickets market. Not anyone can sell tickets, only the Cubs and their now-12 competitor Rooftop businesses who actually have seats from which Cubs games and other Wrigley Field events can be viewed live. If one Rooftop Business were to vanish tomorrow, production would be affected. If four vanished because they were destroyed by the Cubs, production would be noticeably affected. There is nothing in this case that mirrors the reasoning of *Elliott* or *Israel Travel*.

Respectfully Submitted,

Thomas M. Lombardo (6279247)  
Abraham Brustein (327662)  
Di Monte & Lizak, LLC  
216 Higgins Road  
Park Ridge, IL 60068  
847-698-9600 tel  
847-698-9623 fax  
tlombardo@dimontelaw.com  
abrustein@dimontelaw.com  

Right Field Rooftops, LLC, d/b/a Skybox on Sheffield, Right Field Properties, LLC, 3633 Rooftop Management, LLC, d/b/a Lakeview Baseball Club, and Rooftop Acquisition, LLC

*/s/ Thomas M. Lombardo*  
By: Thomas M. Lombardo  
One of their Attorneys