IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RIGHT FIELD ROOFTOPS, LLC, d/b/a SKYBOX ON SHEFFIELD; RIGHT FIELD PROPERTIES, LLC; 3633 ROOFTOP MANAGEMENT, LLC, d/b/a LAKEVIEW BASEBALL CLUB; and ROOFTOP ACQUISITION, LLC, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 15 C 551 |
| v. | ) ) | Judge Virginia M. Kendall |
| CHICAGO BASEBALL HOLDINGS, LLC; CHICAGO CUBS BASEBALL CLUB, LLC; WRIGLEY FIELD HOLDINGS, LLC; and THOMAS S. RICKETTS, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Right Field Rooftops, LLC; Skybox on Sheffield; Right Field Properties, LLC; 3633 Rooftop Management, LLC; Lakeview Baseball Club; and Rooftop Acquisition, LLC (the "Rooftops") filed this action against Defendants Chicago Baseball Holdings, LLC; Chicago Cubs Baseball Club, LLC; Wrigley Field Holdings, LLC; and Thomas S. Ricketts (the "Cubs") alleging that the Cubs engaged in anti-competitive behavior and breached a contract under which the Rooftops would pay 17% of their profits to the Cubs in exchange for the Cubs' promise to not block the view of Wrigley Field from the rooftops (the "License Agreement").

The Court previously grouped the Rooftops' nine claims as follows: (1) attempted monopolization (Counts I and II); (2) false and misleading commercial representations, defamation, false light, and breach of the non-disparagement clause of the License Agreement (Counts III–VII and IX); and (3) breach of contract (Count VIII). The Court dismissed all nine counts with prejudice. The Rooftops, having retained new counsel, attempt one more time to file

1

a new complaint with another argument and now move the Court to amend its judgment pursuant to Federal Rule of Civil Procedure 59(e) and to grant them leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a). (Dkt. No. 78). For the following reasons, the Court denies the Rooftops' motion.

## BACKGROUND

The facts underlying the Complaint are set forth in the Court's order denying Plaintiffs' motion for preliminary injunction. *See Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 878–83 (N.D. Ill. 2015). The dispute arose from the Cubs' construction of a video board in Wrigley Field that blocks the view into the stadium from the surrounding rooftops, the Cubs' acquisition of some rooftop properties, and the Cubs' attempts to control minimum ticket pricing for the rooftops. The Rooftops filed their initial Complaint on January 20, 2015. Three weeks later, the Rooftops sought a temporary restraining order and preliminary injunction to enjoin the Cubs from constructing the video board.

The Court held a TRO hearing on February 18, 2015 and denied the Rooftops' motion for TRO the following day. On April 2, 2015, the Court denied the Rooftops' motions for preliminary injunction because: (1) the exemption of Major League Baseball teams forecloses antitrust claims; (2) live Cubs games are not a relevant market; (3) plans to construct the video board did not constitute anticipatory repudiation; (4) the Rooftops failed to establish that they would suffer irreparable harm and had no adequate remedy at law besides injunctive relief; and (5) a balance of hardships weighed in favor of denying injunctive relief.

On February 17, 2015, the Cubs filed a motion to dismiss all nine counts pursuant to Federal Rule of Civil Procedure 12(b)(6). On September 30, 2015, the Court granted the Cubs' motion to dismiss. *See Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, No. 15

C 551, 2015 WL 5731736 at *4 (N.D. Ill. Sep. 30, 2015). The Court dismissed the monopolization claims (Counts I and II) because Major League Baseball's antitrust exemption applies to the Cubs, the Rooftops failed to establish a plausible relevant market, and the Cubs cannot be limited by antitrust law from distributing their own product. *Id.* at *5–6. The Court dismissed the false and misleading commercial representations, defamation, false light, and breach of the non-disparagement clause claims (Counts III–VII and IX) because the statements made by Defendant Ricketts on which the Rooftops relied to demonstrate these various causes of action were nonactionable statements of opinion by Ricketts that no reasonable person could interpret to be statements of fact or accusations of criminal activity in the context in which Ricketts made them. *Id.* at *6–8. Finally, the Court dismissed the breach of contract claim (Count VIII) because the plain language of the contract allowing the Cubs to conduct any expansion that was approved by the City of Chicago was not limited to expansions to the seating capacity of Wrigley Field, but rather allowed the Cubs to make any expansion including the construction of the video board at issue in this case. *Id.* at *8–9.

The Rooftops did not appeal the dismissal. Instead, on October 28, 2015, the Rooftops filed this motion seeking to amend or alter the Court's judgment and to obtain leave to amend the Complaint. (Dkt. No. 78.) On the same day, the Rooftops' counsel filed a motion to withdraw, (Dkt. No. 76.), which the Court granted on October 29, 2015. (Dkt. No. 84.) In their motion to alter or amend the judgment and allow the Rooftops to amend their Complaint, the Rooftops contend that their recent discovery of the corporate structure of the entities acquiring some of the rooftop businesses at issue requires the Court to reconsider and alter its September 30th Order. (Dkt. No. 80 at 2–3.) Specifically, the Rooftops argue that this new information requires the

Court to alter its judgment with regards to Count II, under which the Rooftops allege attempted monopolization in violation of the Sherman Act. *Id.*

## DISCUSSION

### I. Rule 59(e) Motion to Amend or Alter Judgment

"Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). Under Rule 59(e), the Court may alter or amend its judgment if the movant "clearly establish[es] (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012). This rule "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). However, such motions are not appropriate vehicles for relitigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration. *Sigworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). The decision to grant a Rule 59(e) motion lies in the sound discretion of this Court, and its ruling is reviewed deferentially and will only be disturbed upon a showing that the Court abused that discretion. *See Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Billups v. Methodist Hosp.*, 922 F.2d 1300, 1305 (7th Cir. 1991).

The Rooftops contend that the Court should grant their motion because newly discovered evidence precludes entry of the prior judgment and because the Court committed manifest errors of law. The Rooftops also submit that because the Rule 59(e) motion is accompanied by a motion to amend pursuant to Rule 15, the Court should apply the more liberal amendment

4

standard to determine if it is appropriate to alter the judgment. *See Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 520–22 (7th Cir. 2015). Even applying this more liberal standard, the motion to amend or alter the judgment must still be denied because the proposed First Amended Complaint is futile, as discussed in greater length in Section II.

### A. Newly Discovered Evidence

To support a motion for reconsideration based on newly discovered evidence, the moving party must "show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence [during the pendency of the motion]." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013) (movant must have been unable to discover information despite exercise of due diligence). In this case, the new evidence set forth by the Rooftops concerns the relationships between entities named in the original Complaint, Defendant Ricketts, and entities that have acquired other rooftop properties. Specifically, the Rooftops have provided documentation showing that the holding companies that acquired six of the rooftop properties were owned by Greystone, LLC, which in turn was owned by Northside Entertainment Holdings, LLC. (*See* Dkt. No. 78 Exs. A–C). Northside Entertainment Holdings, of which Ricketts is the executive vice president, owns and operates the Chicago Cubs. (Dkt. No. 78-2 at 41.) The Rooftops have also provided the declaration of an advisor to two of the Plaintiff Rooftops explaining why the Rooftops believed the Cubs were the entity acquiring the rooftop properties, as opposed to Northside Entertainment Holdings, which owns the entities that own and operate the Chicago Cubs and Wrigley Field. (Dkt. No. 78-2 at 2–4.)

All of this information, however, was then and is now a matter of public record and cannot be considered "newly discovered" for purposes of Rule 59(e). *See, e.g., APC Filtration, Inc. v. Becker*, 646 F. Supp. 2d 1000, 1007 (N.D. Ill. 2009) (evidence not newly discovered under Rule 59(e) where previously available as public record); *Duffin v. Exelon Corp.*, No. 06 C 1382, 2007 WL 1385369, at *2 (N.D. Ill. May 4, 2007) (same); *Entm't, Inc. v. City of Northlake*, No. 03 C 692, 2004 WL 1243972, at *2 (N.D. Ill. June 3, 2004) (same). The alleged new documentation was obtained either through the Cook County Recorder of Deeds or the Illinois Secretary of State website and even the declarant averred that he was able to obtain some of the information through mere internet searches. Moreover, all of this information was available to the Rooftops prior to this Court's order of September 30. The purchasing entities recorded the deed for one of the properties on January 12, 2015, (Dkt. No. 78-2 at 19); three others on January 15, 2015, (Dkt. No. 78-2 at 23, 25); and two others on May 15, 2015, (Dkt. No. 78-2 at 6, 12.) Thus, all of the "newly discovered evidence" was available on the public record well before the Court's dismissal of this case. The Rooftops' allegation that their lack of actual knowledge was based in part on the participation of officers of the Cubs in negotiations for acquisition of the rooftop properties is immaterial to the analysis of whether the evidence was newly discovered within the meaning of Rule 59(e), as the information was a matter of public record. Accordingly, the Court will not amend or alter the judgment based on the Rooftops' discovery of new evidence.

### B. Manifest Error of Law or Fact

The Rooftops next claim that this Court erred in its determinations of whether: (1) Major League Baseball's Antitrust exemption applies to the rooftop businesses; (2) a plausible relevant market exists with respect to the rooftop businesses; and (3) the monopolization of the rooftop

businesses is nothing more than the Cubs taking over the distribution of their own product. A manifest error of law or fact occurs where "the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (internal quotations omitted) (citing *Oto v. Metro Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A motion to reconsider cannot, however, "be used to rehash previously rejected arguments. *Vesely v. Armlist LLC*, 762 F.3d 661, 666 (7th Cir.2014) (internal quotations omitted) (citing *Oto*, 224 F.3d at 606).

The Rooftops begin by arguing that the Major League Baseball Antitrust Exemption does not apply in this case. They maintain that the monopolization claim does not concern the business of the Chicago Cubs, but concerns "the market for the sale of views of live Cubs games from Rooftop Businesses outside of Wrigley Field, by independent competitors, who historically have had no involvement with the Chicago Cubs…" (*See* Dkt. No. 80, 7). The Court properly considered this argument in issuing its first three orders in this case. As stated in its dismissal order, this Court has "already held, the exemption applies to the 'business of baseball' in general, not solely those aspects related to baseball's unique characteristics and needs." (*See* Dkt. Not. 74, 4 (citing *Charles O. Finley & Co., Inc. v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978) (despite references to the player reserve system in Supreme Court precedent, "it appears clear from the entire opinions . . . that the Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws")). The Cubs are engaged in the business of publicly displaying baseball games, which is "integral" to the business of baseball. (*See id*. at 5).

Plaintiffs' attempt to circumvent the baseball exemption by now arguing that it is not solely live Cubs game that the Cubs are trying to monopolize, but rather "Live Views of Wrigley

Field Events, which do not consist solely of baseball games" is inappropriate under Rule 59(e). (*See* Dkt. No. 80 at 7). This new argument, is not new at all in that it was actually conceded by Plaintiffs' counsel at oral argument. Yet, it was not raised in the Plaintiffs' previous motions and was not alleged in the Complaint. Raising this argument at this stage is "too little too late" and it is waived for purposes of appeal. *See Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995) (citing *Laserage Tech. v. Laserage Labs.*, 972 F.2d 799, 804 (7th Cir. 1992)). And, regardless, even if it had been addressed appropriately, the amendment is futile.

Next, the Rooftops move the Court to reconsider whether a plausible relevant market exists with respect to the rooftop businesses. The Rooftops contend that the Court incorrectly held that the Rooftops cannot plead any plausible relevant market, given the fact that the Rooftops were given no opportunity to amend the Complaint. As to the Rooftops' assertion that they were not given an opportunity to amend the Complaint, the instant motion is the Rooftops' first attempt to seek leave to amend. This is despite the fact that they were given ample notice of the deficiencies in their Complaint based on the Court's denial of their TRO request on February 19, 2015, as well as their preliminary injunction request on April 2, 2015. Additionally, the motion to dismiss that the Court ultimately granted was filed on February 17, 2015; at no point during the pendency of that motion did the Rooftops seek to amend their Complaint. The Rooftops' argument that they were not given opportunity to amend the Complaint is untrue; they have only just requested such an opportunity. Moreover, as discussed below, the proposed amendment is futile.

The Rooftops also argue that the Court incorrectly determined that a single brand cannot be a relevant market because the Rooftops are not defining the relevant market on a single brand and there is no rule precluding a market from being comprised of a single brand. As with the

antitrust exemption for Major League Baseball, the Rooftops offer no new case law nor any new facts tending to show a manifest error of law or fact; again, they merely contend that the Court incorrectly applied the law and attempt to argue the Court's September 30th Order was erroneous. This is not appropriate grounds for a Rule 59(e) motion.

Lastly, the Rooftops contend that the Court incorrectly held that that the Cubs' attempt to monopolize the rooftop businesses is no more than the Cubs taking over distribution of their own product. In their motion, not only did the Rooftops fail to identify any precedential decision the Court ignored, they did not cite to any case law at all. In sum, the Rooftops failed to offer any controlling law or material facts that the Court ignored prior to the September 30th Order. Accordingly, the Rooftops failed to establish a manifest error of law or fact. Coupled with their failure to establish that the discovery of new evidence requires the Court to alter its judgment, the Rooftops' motion to alter or amend the judgment is denied.

**II. Rule 15 Motion to Amend**

The fact that the Rooftops are simultaneously seeking leave to amend their Complaint under Rule 15(a) does nothing to save their motion. Even applying the liberal standard of Rule 15(a), the Rooftops' motion still fails. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (evaluating motion to reconsider and leave to amend under the Rule 15(a) standard); *Runnion v. Girl Scouts of Greater Chi. & NW Ind.*, 786 F.3d 510, 521 (7th Cir. 2015) (same). Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[a] district court may deny leave to file an amended complaint in the case of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.' " *Childress v. Walker*, 787 F.3d 433, 441 (7th Cir. 2015) (quoting *Bausch v.*

9

*Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (internal quotation marks and citations omitted)).

This Court's denial of a motion for leave to amend is reviewed under an abuse of discretion standard and will not be reversed "when the court provides a reasonable explanation for why it denied the proposed amendment." *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). "A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint." *See id*. (citing *Indep. Tr. Corp. v. Stewart Inf. Serv's Corp.*, 665 F.3d 930, 943–44 (7th Cir. 2012) (district court did not abuse its discretion by dismissing a complaint without allowing an opportunity to amend because the plaintiff "did not offer any meaningful indication of how it would plead differently"); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (district court did not abuse its discretion by denying a motion for reconsideration requesting leave to amend the complaint "because the plaintiff did not attach an amended complaint and did not indicate the 'exact nature of the amendments proposed' " (quoting *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1189 (7th Cir.1985)).

Here, the Rooftops' proposed amendments are futile. First, the Rooftops seek to include Northside Entertainment Holdings, LLC and other entities involved in the purchase of the rooftops that are found to be necessary parties as defendant(s). (*See* Dkt. No. 80, 5). Adding these "non-Cub" entities to the complaint will not save Count II from the baseball exemption. In its original order dismissing this case, the Court considered and dismissed the individual defendant, Thomas Ricketts. In so doing, the Court recognized that the proper inquiry with respect to the baseball exemption is the type of conduct at issue. (*See* Dkt. No. 69, Prelim. Inj.

Order at 13) (noting that the "*Toolson* defendants themselves included . . . both the owner and general manager of the Cincinnati club"). Specifically, the issue is whether the conduct is the business of baseball, regardless of whether that business is conducted by a team or owner or separate corporation. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 772 n.19 (1984) (internal quotation marks and citation omitted) (refusing to apply heightened antitrust scrutiny in case where parent "availed [itself] of the privilege of doing business through separate corporations").

The Rooftops also move to amend Count II and clarify that the relevant market is not a single brand, but "Live Views or Wrigley Field Events." (*See* Dkt. No. 80, 11.) As already mentioned, the Plaintiffs conceded at oral argument that—contrary to their new position—the "very purpose of one of these clubs is to sell admissions to watch a Cubs game." *See* TRO Tr. at 20; *see also McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (an admission "at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings."). Moreover, this proposed amendment does not render the relevant market allegations plausible. As the Court previously stated, "[t]he use or uses to which a product is put controls the boundaries of the relevant market. The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." (*See* Dkt. No. 69, 16) (internal citations and quotation marks omitted). Events other than live Cubs games, such as concerts, are reasonably interchangeable with substitutes. Yes, Wrigley Field may be a popular venue to watch a concert, but the "relevant market should be expanded to all other comparable places…" such as other music venues in this case. *See Elliott v. United Ctr.*, 126 F.3d 1003, 1005 (7th Cir. 1997). Plaintiffs' proposed amendment fails to allege a plausible relevant market.

Lastly, the Rooftops seek to amend their Complaint to clarify that "Plaintiffs do not concede that the attempt to monopolize the Rooftop Businesses by the Ricketts family, through Defendant Northside Entertainment Holdings, LLC, constitutes the 'takeover' of the distribution of Cubs baseball by the supplier, Chicago Cubs Baseball Club, LLC." (*See* Dkt. No. 80, 12.) The Rooftops maintain that Northside Entertainment, which is invested in by the Ricketts family, is one of the investors in both Chicago baseball Holdings, LLC and Wrigley Field Holdings, LLC; and that it is the Ricketts family and Northside Entertainment, not the Cubs, that are investing in the Rooftops Businesses. The Rooftops, however, have failed to provide any case law demonstrating why this "clarification" would allow the Amended Complaint to survive a second motion to dismiss. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n. 1 (7th Cir. 2005) (internal quotation marks and citation omitted) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived ...."). This lack of supporting case law is especially problematic with respect to this argument because the Court's holding that the Cubs cannot monopolize their own product was merely used in this Court's September 30th order as an "additional reason" for dismissal beyond the fact that there is no plausible relevant market for the presentation of live Cubs games. The argument is deemed waived. *See id*. The Court notes, however, that merely because an entity with ownership interest in the Cubs—and not the Cubs themselves—purchased the Rooftop Businesses, does not render this additional reason for dismissal any less valid. *See, e.g., S.W.B. New England, Inc. v. R.A.B. Food Grp., LLC.*, No. 06 Civ. 15357(GEL), 2008 WL 540091, at *1 (S.D.N.Y. Feb. 27, 2008) (rejecting a vertical-integration-as monopoly theory where the vertical integration occurred between two "affiliated" but separate businesses "under common ownership and control"). Because Plaintiffs' proposed amendments would still be subject to the baseball

exemption and because they have failed to allege a plausible relevant market, the Court denies the Rooftops' Motion to Amend the Complaint. *See Foster v. Deluca*, 545 F.3d 582, 584 (7th Cir. 2008) (internal quotations and citations omitted) (a motion for leave to amend may be denied where "the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.").

## **CONCLUSION**

For the reasons stated, the Court denies the Rooftops' Motion to Amend Judgment and for Leave to File an Amended Complaint. (Dkt. No. 78).

Date: __8/31/2016__  _____
    Virginia M. Kendall
    United States District Court Judge
    Northern District of Illinois